## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EMC INSURANCE COMPANY<br>717 Mulberry Street<br>Des Moines, IA 50303-0712<br>      AND<br>NUFLOOR SYSTEMS A DIVISION OF<br>TCS, INC.<br>3341 Cavalier Trail<br>Cuyahoga Falls, Ohio 44224<br><br>          vs.<br><br>MICHAEL J. ZICOLELLO, ESQUIRE<br>AND SCHEMERY AND ZICOLELLO<br>ATTORNEYS AT LAW<br>333 Market Street<br>Williamsport, PA 17701 | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br>JURY TRIAL DEMANDED<br><br><br>NO. |

## COMPLAINT

1.    EMC Insurance Companies is a duly licensed insurance company licensed to write insurance in the State of Ohio and the Commonwealth of Pennsylvania, herein referred to as EMC, with its principle place of business in Iowa.

2.    NuFloor Systems, a Division of TCS, Inc. is a corporation with offices located at 3341 Cavalier Trail, Cuyahoga Falls, Ohio 44224, hereinafter referred to as NuFloor.

3.    Michael J. Zicolello, Esquire is an attorney duly licensed to practice law

in the Commonwealth of Pennsylvania and a partner or member of the Law Firm of Schemery and Zicolello located at 333 Market Street, Williamsport, PA 17001, hereinafter referred to as Zicolello.

4.    This is a legal malpractice action brought pursuant to the diversity jurisdiction of the Court.

5.    The amount in controversy is greater than $75,000.00.

6.    In 1998, EMC insured Technical Construction Specialties, Inc. d/b/a Nufloor Systems (hereinafter referred to as Nufloor), an Ohio corporation for certain liabilities.

7.    On April 15, 2008, Pennsylvania State University (hereinafter referred to as PSU), entered into an agreement with UHL Construction Company (hereinafter referred to as UHL) as general contractor to build Ohio Hall on the PSU campus in Erie County, PA.

8.    UHL contracted with Nufloor to install "gypcrete" underlayment on the floors of the building which was constructed of preformed concrete panels. Nufloor had installed gypcrete underlayment panels between 500 and 2,000 times before this job.

9.    Gypcrete is a type of concrete used to smooth the surface of the concrete panels in order to install wall to wall carpeting.

10.     Russell Carpet and Tile Company installed the wall to wall carpeting.

11.     Pursuant to a request by UHL to the architect, UHL instructed Nufloor to use "Rapid Floor Plus" instead of Gypcrete 2000 which had been originally specified by the architect.

12.     The architect had not approved of the use of "Rapid Floor Plus", but instead approved the use of "Rapid Floor Ultra" which was not communicated by UHL to Nufloor.

13.     Rapid Floor Plus had a rating 1,500 to 2,500 pounds per square inch while Rapid Floor Ultra had a rating of 2,500 to 4,000 pounds per square inch. It had been directed by the architect that the underlayment have a rating of a minimum of 2,500 pounds per square inch.

14.     The Rapid Floor Plus was installed by Nufloor on April 9 and 10 and May 19 of 1999.

15.     The installation of Rapid Floor Plus was supervised by representatives UHL.

16.     When the students moved into the building in August of 1999, it was ascertained that the carpeting was buckling and moving.

17.     Due to this condition, PSU complained to Russell who made several attempts to rectify the situation between 1999 and 2003 at which time Russell notified

3

PSU that the buckling was caused by faulty installation of the gypsum underlayment by Nufloor.

18.    PSU attempted to have UHL rectify the situation and when they did not PSU had the carpeting removed and replaced by other vendors in 2005.

19.    PSU commenced an action in Centre County, Pennsylvania, on March 7, 2007, Docket No. 07-0900 against UHL.

20.    The Complaint against UHL was filed on July 31, 2007 for the cost of the carpet replacement.

21.    UHL joined Nufloor and Russell on 3/7/08.  The joinder Complaint against Nufloor alleged breach of contract and common law indemnification.

22.    Pursuant to its Policy of Insurance, EMC agreed to provide a defense and indemnity to NuFloor.

23.    Pursuant to this obligation, NuFloor retained the professional legal services of Defendants Schemery & Zicolello and Zicolello to represent the common interests of NuFloor and EMC in the underlying litigation.

24.    Mr. Zicolello undertook the dual representation of EMC and NuFloor.

## COUNT I - MALPRACTICE

25.    The averments set forth in Paragraphs 1 through 33 of this Complaint are adopted as if set forth herein.

4

26.     A non jury trial was held before the President Judge of Centre County, David E. Grine on February 9, 10 and 11 of 2010.

27.     On or about September 14, 2010, Judge Grine entered a verdict in favor of PSU against UHL in the sum of $109,973.25.

28.     On or about January 14, 2011, Judge Grine entered judgment in favor of UHL against Nufloor in the sum of $189,744.98 which was made up of the $109,973.25 claim by PSU plus attorney fees of $79,771.73.

29.     No post-trial motions were filed by any party.

30.     On February 14, 2011, Zicolello on behalf of Nufloor filed an Appeal directly to the Superior Court of Pennsylvania.

31.     On March 14, 2011, the Superior Court issued an Order requiring Nufloor to show cause why an appeal should not be dismissed for failure to file post trial motions pursuant to Rule 227.1 of the Pennsylvania Rules of Civil Procedure.

32.     Zicolello responded to this Order.

33.     On April 4, 2011, Zicolello sent a letter to Lewis Parsenious of EMC advising that the Superior Court was considering dismissing the appeal because Zicolello had failed to file post trial motions which Zicolello did not think were mandatory and further advised that he was filing a Motion with the Trial Court to file post trial motions *nunc pro tunc*.

34. On March 31, 2011, the Superior Court issued an Order dismissing Nufloor's appeal.

35. The trial court granted Nufloor's *nunc pro tunc* Petition to file post trial motions over the objections of PSU and UHL on April 18, 2011.

36. After arguments before the Trial Court on Nufloor's post trial motions on the merits of the case, the Trial Court denied Nufloor's post trial motions.

37. On June 17 and 24 of 2011, PSU and UHL filed Praecipes for Judgment.

38. Zicolello on behalf of Nufloor filed a Notice of Appeal to the Superior Court on July 5, 2011.

39. PSU and UHL filed Cross-Appeals to the Superior Court based upon the Trial Court allowing Nufloor to file motions for a new trial *nunc pro tunc*, on July 13 and 15 of 2011.

40. The Superior Court entered an Order reversing the Trial Court's Order allowing Nufloor to file motions for a new trial *nunc pro tunc* on August 9, 2012 and did not consider the appeal on its merits.

41. Rule 227.1 of the Pennsylvania Rules of Civil Procedure provides that post trial motions shall be filed within 10 days after a decision or adjudication in the case of a trial without a jury.

42. In its Opinion dated 8/9/12 (a copy of which is attached hereto and

marked as Exhibit "A") the Court dismissed the appeal filed by Zicolello on behalf of Nufloor and ruled that the provisions of Pennsylvania Rule of Civil Procedure 227.1 are clear and unambiguously mandate the filing of post trial motions following a non-jury verdict and the allowance or permitting same to be filed *nunc pro tunc* by the lower court was an abuse of discretion.

43.    Mr. Zicolello in his letter of April 4, 2011 (a copy of which is attached hereto and marked as Exhibit "B") admits that his appeal was defective and Post Trial Motions were required under the case law.

44.    Mr. Zicolello in his letter of April 4, 2011 states that the case he presented on behalf of Nufloor at trial was strong and should have prevailed and the appeal of the Judge's decision was well warranted.

45.    The denial of the right and ability to appeal the underlying case was caused solely by the negligence and legal malpractice of Zicolello and his firm and resulted in the payment of large sums of money by EMC and Nufloor which will hereinafter be set forth.

46.    The Defendants were negligent and their actions failed to conform to the applicable standard of care in advising initially to proceed with the underlying case Non Jury and failing to demand a jury trial.

47.    Since one of the Counts filed against EMC's insured claimed that Nufloor

7

supplied a defective product, Defendants were negligent and their actions failed to conform to the applicable standard of care in failing to join the manufacturer of the product, Maxxon Company.

48.  The Defendants were negligent and their actions failed to conform to the applicable standard of care in failing to file a Counterclaim against UHL.

49.  Defendants were negligent and their actions failed to conform to the applicable standard of care in failing to file a Motion for Summary Judgment against UHL contesting validity of the Indemnification Agreement because the negligence of UHL was not defined in the Indemnity Agreement.

50.  The Defendants were negligent and their actions failed to conform to the applicable standard of care in failing to file a Crossclaim against Russell.

51.  The Defendants were negligent and their actions failed to conform to the applicable standard of care in failing to object to the venue in Centre County.

52.  Defendants were negligent and their actions failed to conform to the applicable standard of care in not requesting the Court to strike the testimony of the witness Smale after he admitted that his testimony was erroneous.

53.  The Defendants were negligent and their actions failed to conform to the applicable standard of care in failing to object to the testimony of the witness, Hunt when it was based upon the erroneous testing of Smale and Robinson Testing

Company.

54. The Defendants were negligent and their actions failed to conform to the applicable standard of care in failing to object and appeal a finding that NuFloor should indemnify UHL; when UHL directed NuFloor to use Rapid Four Plus which was an inappropriate product and not approved by the architect.

55. The Defendants were negligent and their actions failed to conform to the applicable standard of care in failing to object to the Court's ruling in the dismissal of Russell from the case.

56. The Defendants were negligent and their actions failed to conform to the applicable standard of care in not opposing the indemnity of UHL based upon UHL's negligence in the improper procurement of samples to be tested by Robinson Testing.

57. Defendants held themselves out to be experienced and capable trial attorneys.

58. As a result of Defendants' negligence and their actions failing to conform to the applicable standard of care and failure to protect the appeal, the Plaintiffs have been deprived of the opportunity to have the judgment of the trial court reversed and would not have been compelled to pay considerable sums of money due to these erroneous judgments.

59. It is obvious and agreed to by Defendants that the trial judge made several

erroneous rulings and failed to make rulings which would have resulted in a reversal of these judgments in the Appellate Court.

60.     As a result of the negligence of Defendants as described above and as will be more fully developed at trial, Plaintiffs suffered damages.

61.     These damages consist of, but are not limited to, attorney's fee expended, payment of judgments plus interest and such other damages as will be more fully developed.

62.     As a result of Defendants' negligence, Plaintiff EMC has been forced to expend the sum of $238,095.18 and Nufloor expended the sum of $106,947.81 for a total of $345,042.99, plus such other damages and payments as will be more fully developed at trial.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants in the sum of $345,042.99 plus interest and costs.

**MAYERS, MENNIES & SHERR, LLP**

BY:/s/ ANTHONY R. SHERR, ESQUIRE
Attorney for Defendant

3031 Walton Road, Building A
    Suite 330, P.O. Box 1547
Blue Bell, PA 19422-0440
(610) 825-0300
Fax (610) 825-6555

**EXHIBIT "A"**

J-A16020-12

| THE PENNSYLVANIA STATE UNIVERSITY, | : | IN THE SUPERIOR COURT OF |
| v. | : | PENNSYLVANIA |
| UHL CONSTRUCTION COMPANY, INC., | : | |
| Appellant | : | |
| v. | : | |
| NUFLOOR SYSTEMS, INC., A DIVISION OF TECHNICAL CONSTRUCTION SPECIALTIES, INC., AND RUSSELL'S CARPET AND TILE CO., | : | No. 1253 MDA 2011 |

Appeal from the Judgment entered June 24, 2011,
Court of Common Pleas, Centre County,
Civil Division at No. 2007-900

BEFORE:  FORD ELLIOTT, P.J.E., DONOHUE and ALLEN, JJ.

MEMORANDUM BY DONOHUE, J.:

**FILED AUGUST 09, 2012**

NuFloor Systems, Inc. ("NuFloor") appeals from the judgment entered on June 24, 2011, by the Court of Common Pleas, Centre County, holding it responsible for the defective installation of the gypsum underlayment[1] in a Pennsylvania State University ("PSU") dormitory.  PSU and UHL Construction Company, Inc. ("UHL") cross-appeal based upon the trial court's grant of permission to NuFloor to file post-trial motions *nunc pro tunc*.  After careful

---

[1]  Gypsum underlayment is a self-leveling cement-like substance that is poured onto a subfloor to allow carpet and other floorings to be installed onto a smooth surface.

- 2 -

J-A16020-12

review, we reverse the trial court's order permitting NuFloor to file post-trial motions *nunc pro tunc* and dismiss NuFloor's appeal.

The facts and procedural history relevant to deciding these appeals are uncontested. In 1998, PSU and UHL entered into a contract for UHL to serve as the general contractor for construction in a dormitory, Ohio Hall, at PSU's Erie campus. UHL hired NuFloor as a subcontractor to install the gympsum underlayment for the dormitory floor, and Russell's Carpet and Tile Co. ("Russell's") as a subcontractor to install the carpet and other floor coverings over the gypsum underlayment.

In 1999, PSU began to see "bubbling" of the carpet in certain areas of the dormitory. PSU contacted Russell's, who attempted to address the problem. The "bubbling" continued for the next several years despite Russell's' continued attempts to remedy the issue.

In 2003, Russell's informed PSU that the problem with the carpet was being caused by the gypsum underlayment. PSU conducted an independent investigation, and then contacted UHL about the failure of the gypsum underlayment. UHL, in turn, contacted NuFloor. UHL ultimately disclaimed any responsibility for the flooring problem, causing PSU to retain an outside contractor to remove the defective underlayment and install new carpet in 2005.

On March 7, 2007, PSU initiated the underlying cause of action against UHL by filing a praecipe for writ of summons in the trial court. PSU filed a

J-A16020-12

complaint against UHL on July 31, 2007 alleging breach of contract by UHL. On March 7, 2008, UHL filed a third-party complaint against NuFloor and Russell's, adding them as additional defendants. A non-jury trial commenced on February 9, 2010 and concluded on February 11, 2010. At the close of evidence, the trial court dismissed all claims against Russell's.

On September 15, 2010, the trial court entered a verdict in favor of PSU. On January 17, 2011, the trial court entered an order ruling on UHL's indemnification claim in favor of UHL and against NuFloor. No party filed post-trial motions. Instead, NuFloor filed an appeal to this Court on February 14, 2011. On March 14, 2011, this Court issued an Order requiring NuFloor to show cause why its appeal should not be dismissed based upon its failure to file post-verdict motions before the trial court. NuFloor responded, and on March 31, 2011, this Court issued an Order dismissing the appeal.

In the meantime, on March 22, 2011, NuFloor filed a "Motion for an Extension, Nunc Pro Tunc, to File for Motion for Post Trial Relief" in the trial court. On April 18, 2011, the trial court granted this motion over PSU's and UHL's objections, and on April 27, 2011, NuFloor filed a motion for post-trial relief *nunc pro tunc*. The trial court denied the *nunc pro tunc* motion for post-trial relief on June 3, 2011. On June 17 and June 24, 2011, respectively, PSU and UHL each filed a praecipe for the entry of judgment from the non-jury verdicts.

- 4 -

J-A16020-12

On July 5, 2011, NuFloor filed its notice of appeal. On July 13, 2011 and July 15, 2011, respectively, PSU and UHL filed their cross-appeals. On August 8, 2011, this Court consolidated the three appeals *sua sponte*.

On appeal, NuFloor presents the following issues for our review:

1. Whether judgment n.o.v. or a new trial is warranted because the evidence does not support the finding that NuFloor's installation of the gypsum subfloor was defective, negligent, or otherwise improper?

2. Whether judgment n.o.v. or a new trial is required because the trial court abused its discretion when it failed to sanction [PSU] for its conduct in discarding the gypsum underlayment that NuFloor allegedly defectively installed?

NuFloor's Appellate Brief at 5.

In their cross-appeals, PSU and UHL raise a single, identical issue for our review: did the trial court err by granting NuFloor's motion to file post-trial motions *nunc pro tunc*, as the only explanation for NuFloor's failure to file timely post-trial motions was counsel's "ignorance" of the need to file said motions? PSU's Brief at 1; UHL's Brief at 1.

Because our ability to address the issues raised on appeal by NuFloor is determined by our resolution of the issue raised by PSU and UHL, we begin by first addressing the cross-appeals.[2] The decision of whether to

---

[2] Pursuant to the Rules of Civil Procedure, a party must file post-trial motions within 10 days after the filing of the decision in a non-jury trial. Pa.R.C.P. 227.1(c)(2). The failure to timely file post-trial motions results in waiver of those issues the party wishes to raise on appeal. ***Chalkey v.***

J-A16020-12

allow the filing of a post-trial motion *nunc pro tunc* is vested in the sound discretion of the trial court, and will not be reversed absent an abuse of that discretion. **Lenhart v. Cigna Companies**, 824 A.2d 1193, 1195 (Pa. Super. 2003). "An abuse of discretion is not merely an error of judgment but is found where the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will as shown by the evidence or the record." *Id.* (citation and quotation omitted). To decide whether the trial court abused its discretion by permitting NuFloor to file post-trial motions *nunc pro tunc*, we engage in a brief discussion of the case law addressing untimely filed post-trial motions.

Thirty years ago, this Court decided **Stokes v. Thiemann**, 442 A.2d 322 (Pa. Super. 1982). The case involved an action in assumpsit and trespass. The jury returned a verdict in favor of the plaintiff, and the defendants tried to settle with the plaintiff for less than the amount of the verdict. When negotiating proved unsuccessful, the defendants filed their post-trial motions, one month after the verdict. The trial court refused to consider the defendants' late-filed motions.

On appeal, this Court affirmed. In reaching its decision, the Court discussed a Pennsylvania Supreme Court case, **E.J. McAleer & Co. v.**

---

**Roush**, 569 Pa. 462, 469, 805 A.2d 491, 496 (2002); **Lane Enterprises, Inc. v. L.B. Foster Co.**, 551 Pa. 306, 306, 710 A.2d 54 (1998).

- 6 -

J-A16020-12

*Iceland Products*, 475 Pa. 610, 381 A.2d 441 (1977), which involved Rule of Civil Procedure 1038(d).[3] That Rule provided that exceptions to a trial court's ruling may be filed within 20 days of the decision. The Court in *McAleer* recognized that the trial court may, in appropriate circumstances, permit a party to file exceptions late. The *Stokes* Court noted, however, that our Supreme Court "found no legally cognizable reason for the failure to comply with the rule where counsel's explanation was inadvertence." *Stokes*, 442 A.2d at 323. We therefore concluded that an appellant who seeks reversal of a trial court's refusal to entertain post-trial motions filed beyond the 10-day period prescribed by Rule 227.1 "must show good reasons for the delay and also that he was injured by an abuse of discretion by the trial court." *Id.* at 324.

Six years later, in *Wittig v. Carlacci*, 537 A.2d 29 (Pa. Super. 1988), *abrogated on other grounds by* *Zeglin v. Gahagen*, 571 Pa. 321, 812 A.2d 558 (2002), this Court affirmed the trial court's decision to entertain post-trial motions filed more than 10 days after the trial court issued its decision. In that case, the docket did not indicate that the parties ever received notice from the prothonotary of the December 5, 1986 trial court decision. *Id.* at 30; *see* Pa.R.C.P. 1038(c) (requiring notice of the trial court's decision to be

---

[3] Pa.R.C.P. 1038(d) applied to non-jury trials in assumpsit. *Stokes*, 442 A.2d at 323. Since *McAleer* was decided, the procedural distinctions between actions in assumpsit, trespass, and equity have been abolished. *See* Pa.R.C.P. 1001, *Note*.

J-A16020-12

provided to the prothonotary); Pa.R.C.P. 236(b) (requiring the prothonotary to include in the docket that notice of the decision was sent to the parties). The defendant filed post-trial motions on December 23, 1986, and the plaintiff did not object. The Court noted that post-trial motions are procedural motions, and that a trial court "has broad discretion to entertain untimely procedural motions." *Wittig*, 537 A.2d at 30. Because of the prothonotary's failure to provide notice to the parties of the trial court's decision and the plaintiff's failure to object or to allege prejudice as a result of the late filing of the post-trial motions, we concluded that the trial court did not abuse its discretion. *Id.*; *see also Gertz v. Temple Univ.-Commonwealth Sys. of Higher Educ.*, 661 A.2d 13, 14-15 (Pa. Super. 1995) (citing *Wittig* in affirming trial court's decision to allow the filing of post-trial motions *nunc pro tunc* where the appellant did not object to the late-filed motion before the trial court).

Then in 1991, the Commonwealth Court, relying on this Court's precedent, decided *Gallagher v. Bensalem Twp.*, 598 A.2d 325 (Cmwlth. Ct. 1991). In that case, the trial court entered a non-jury verdict in favor of the defendants on June 7, 1990, and the parties were notified of the verdict on June 11, 1990. On June 29, 1990, the plaintiff requested leave to file a post-trial motion *nunc pro tunc*, and the defendants objected. The reason provided by the plaintiff for the late filing was "that counsel inadvertently placed this matter in his diary 30 days after the verdict instead of 10 days

- 8 -

J-A16020-12

after[.]" *Id.* at 326. The trial court found the reason to be "inexcusable," and denied the plaintiff's request. *Id.*

On appeal, the Commonwealth Court affirmed. Relying on this Court's holdings in **Wittig** and **Stokes**, it stated: "We have no dispute with the principle that a trial court may exercise its discretion to address an untimely filed post-trial motion if the adverse party has no objection to the untimeliness and states so on the record." *Id.* at 327. Where there is an objection to the untimely filed post-trial motion, however, the reason for the late filing and the resulting prejudice to the adverse party must be examined. *Id.* at 328. The Commonwealth Court concluded that "counsel's mistake in determining the deadline for filing post-trial motions [...] is not a legally cognizable excuse which would warrant noncompliance with Rule 227.1[.]" *Id.* It further found "prejudice does result to a party who is now put to the task of defending himself where there is no good reason for the default and where he is required to forfeit a right (in this case, the right to have the judgment entered) by reason of the opposing party's failure to timely file a post-trial motion." *Id.*

Also in 1991, this Court decided the case of **Brocklehurst by Brocklehurst v. Watson**, 597 A.2d 631 (Pa. Super. 1991). That case involved a motion for delay damages filed 18 days after the verdict rather than within 10 days as is required by Rule 238(c). *Id.* at 632; **see** Pa.R.C.P. 238(c). The late filing was caused by appellees' counsel's failure to fully

- 9 -

J-A16020-12

read the Rule in question, erroneously believing that the applicable rule ended with subsection (b)(2). Appellants objected to the untimely filing of the motion. The trial court permitted the late filing pursuant to our holding in **Wittig**. On appeal, this Court reversed, stating:

> We find the reason given by counsel for not filing the motion in a timely manner, that is, her inadvertence because she only read half the Rule and overlooked the part pertaining to the ten-day time limit, to be an insufficient reason for the trial court to overlook her late filing. The court's acceptance of that reason amounted to an abuse of discretion requiring reversal.

**Brocklehurst**, 597 A.2d at 633.

In 2003, this Court decided the **Lenhart** case, which involved the denial of a request to file post-trial motions *nunc pro tunc*. The trial court entered a non-jury verdict in favor of the plaintiff, which stated: "Judgment in favor of Lenhart and against Life Insurance Company [...]." **Lenhart**, 824 A.2d at 1194. The insurance company did not file post-trial motions within 10 days of the verdict. Lenhart filed a praecipe for the entry of judgment, and the insurance company subsequently filed a notice of appeal. Lenhart filed a motion to quash the appeal based upon the insurance company's failure to file post-trial motions. This Court granted the motion to quash, and subsequently denied the insurance company's motion for reconsideration.

- 10 -

J-A16020-12

Thereafter, the insurance company filed a motion before the trial court seeking permission to file post-trial motions *nunc pro tunc*. The trial court denied the motion, and the insurance company appealed, arguing that the trial court "created confusion" by using the word "judgment" in its verdict, which caused the insurance company to immediately appeal to avoid waiving its right to appeal.[4] *Id.* at 1195.

In affirming the trial court's denial of *nunc pro tunc* relief, this Court examined cases deciding requests to file an **appeal** *nunc pro tunc*, not the line of cases dealing with *nunc pro tunc* post-trial motions. In neither circumstance is the negligence of the putative appellant sufficient grounds for relief. We observed in **Lenhart** that such a filing is only permissible when the delay occurred because of "extraordinary circumstances involving fraud or some breakdown in the court's operation through a default of its officers" or if the appeal is untimely because of "non-negligent circumstances either as they relate to appellant or his counsel[.]" *Id.* at 1196 (citation omitted). "More is required before such an appeal will be permitted than the mere hardship imposed upon the appellant if the request is denied." *Id.* (citation omitted).

We further noted that our Supreme Court has made clear that "the circumstances occasioning the failure to file an appeal must not stem from

---

[4] In cases that require an entry of judgment, an appeal must be taken within 30 days of said entry. *See Slusser v. Laputka, Bayless, Ecker, & Cohn, P.C.*, 9 A.3d 1200, 1205 (Pa. Super. 2010).

J-A16020-12

counsel's negligence or from a failure to anticipate foreseeable [and avoidable] circumstances." *Id.* (citing *Criss v. Wise*, 566 Pa. 437, 444, 781 A.2d 1156, 1160 (2001)). In affirming the decision of the trial court, we stated: "The grant of *nunc pro tunc* relief is not designed to provide relief to parties whose counsel has not followed proper procedure in preserving appellate rights." *Id.* at 1197-98 (citation omitted).

We now turn to the case *sub judice*. NuFloor filed an appeal to this Court on February 14, 2011 without first filing post-trial motions. Notice of Appeal, 2/14/11. On March 14, 2011, this Court identified NuFloor's error, and issued a rule to show cause why the appeal should not be dismissed, ultimately dismissing the appeal because of the failure to file post-trial motions. Order, 3/14/11; Order, 3/31/11.

Following the receipt of the rule to show cause, NuFloor filed a request with the trial court to file post-trial motions *nunc pro tunc*. Therein, NuFloor indicated that it failed to file post-trial motions because "the text of [Rule] 227.1[] does not state that Motions for Post Trial Relief are a mandatory pre-requisite for an appeal," but acknowledged that the 2006 decision of *Harvey v. Rouse Chamberlin, Ltd.*, 901 A.2d 523 (Pa. Super. 2006), clearly states that post-trial motions must be filed prior to appealing a non-jury verdict. Motion for an Extension, Nunc Pro Tunc, to File for Motion for Post Trial Relief, 3/22/11, at ¶¶ 6-7; *see also* N.T., 4/15/11, at 4. Both PSU and UHL objected to NuFloor filing post-trial motions *nunc pro tunc*,

J-A16020-12

arguing, *inter alia*, that they would be prejudiced by having to "incur additional attorney fees and also the needless delay in the resolution of this action." N.T., 4/15/11, at 7, 13. Following oral argument, the trial court granted NuFloor's request to file post-trial motions *nunc pro tunc*. Trial Court Order, 4/15/11; ***see also*** Trial Court Opinion, 9/8/11.

Initially, we note our disagreement with NuFloor's assertion that Rule 221.7 does not clearly and unambiguously mandate the filing of post-trial motions following a non-jury verdict. The Rule states, in relevant part: "Post-trial motions **shall be filed** within ten days after [...] notice of nonsuit or the filing of the decision in the case of a trial without a jury." Pa.R.C.P. 227.1(c)(2) (emphasis added); ***see also Stokes***, 442 A.2d at 324 (referring to the requirement of filing post-trial motions set forth in Rule 227.1 as "clear" and "mandatory").[5]

---

[5] Curiously, on appeal, NuFloor claims that it believed its two sets of "Post Trial Submissions," filed prior to the trial court's verdict, wherein it raised the same issues it later raised on appeal, satisfied the requirement of filing post-trial motions before appealing to this Court. NuFloor's Appellee's Briefs at 8. Not only is this in direct contradiction to NuFloor's prior candid admission that it did not realize that post-trial motions were required prior to filing an appeal, but it is refuted by the plain language of Rule 221.7(b)(1). That Rule clearly states that the issues raised in post-trial motions must have first been raised before the trial court prior to verdict:

> Except as otherwise provided by Pa.R.E. 103(a), post-trial relief may not be granted unless the grounds therefor, if then available, were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions

J-A16020-12

What is just as clear, based upon the case law set forth hereinabove, is that the reason provided to the trial court by NuFloor for failing to timely file post-trial motions is not legally cognizable as a basis for relief. Counsel's inadvertence in reading the relevant Rule of Civil Procedure and failure to review existing case law on the issue does not amount to a sufficient reason for the trial court to permit the late filing of a post-trial motion. *See Stokes*, 442 A.2d at 324; *Brocklehurst*, 597 A.2d at 633. This is not an "extraordinary circumstance," let alone a "non-negligent" circumstance that counsel for NuFloor could not have avoided. *See Lenhart*, 824 A.2d at 1196. As our Supreme Court noted, "if inadvertence of counsel were a valid reason for disregarding the time limitation rules of our Supreme Court, then they might as well not have any rules at all." *McAleer*, 475 Pa. at 615, 381 A.2d at 444 (quoting the trial court with approval). Furthermore, PSU and UHL objected to the untimely filing of post-trial motions, and their allegation of prejudice is acceptable. *See Gallagher*, 598 A.2d at 328; *cf. Wittig*, 537 A.2d at 30. Therefore, we are compelled to conclude that the trial court abused its discretion by granting NuFloor's request to file post-trial motions *nunc pro tunc*.

---

of law, offer of proof or other appropriate method at trial.

Pa.R.C.P. 227.1(b)(1).

J-A16020-12

Based upon our resolution of the issue raised by PSU and UHL in their cross-appeals, we are unable to address the issues raised by NuFloor in its appeal, as all issues are waived for failure to file a timely post-trial motion preserving the issues for our review. *Chalkey v. Roush*, 569 Pa. 462, 469, 805 A.2d 491, 496 (2002); *Lane Enterprises, Inc. v. L.B. Foster Co.*, 551 Pa. 306, 306, 710 A.2d 54 (1998).

Order permitting NuFloor to file post-trial motions *nunc pro tunc* reversed. Appeal filed by NuFloor dismissed. Judgments affirmed. Jurisdiction relinquished.


Judgment Entered.

*Mary A. Graybill*
Interim Deputy Prothonotary

Date: 8/9/2012

- 15 -

Pennsylvania State University ⠀⠀⠀: ⠀⠀⠀ IN THE SUPERIOR COURT
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀ : ⠀⠀⠀⠀⠀ OF PENNSYLVANIA
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀ :
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀ : ⠀⠀⠀⠀⠀ (C.P. Centre County
⠀⠀⠀⠀⠀⠀⠀⠀ v. ⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀ : ⠀⠀⠀⠀⠀ No. 07-0900)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀ :
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀ : ⠀⠀⠀⠀⠀ No. 338 MDA 2011
UHL Construction Co., Inc., et al. ⠀⠀ : ⠀⠀⠀⠀⠀ Filed: March ⠀ 14 , 2011

### ORDER

⠀⠀⠀⠀Appellant, additional defendant below, filed a notice of appeal from the nonjury verdicts of January 17, 2011 and September 14, 2010. There is no indication that appellant filed post-trial motions.

⠀⠀⠀⠀Pa.R.C.P. 227.1(c)(2) states: "Post-trial motions shall be filed within ten days after notice of nonsuit or the filing of the decision in the case of a trial without jury." Pa.R.A.P. 302(a) states: "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." To preserve issues for appeal, parties are required to file post-trial motions following a verdict entered after a trial in law or equity. ***Chalkey v. Roush***, 805 A.2d 491 (Pa. 2002). An appeal lies from entry of judgment subsequent to the trial court's disposition of post-trial motions. ***Harvey v. Rouse Chamberlin, Ltd.***, 901 A.2d 523 (Pa. Super. 2006).

⠀⠀⠀⠀Appellant is hereby directed to show cause, within ten days of the date of this order, why this appeal should not be dismissed for failure to file post-trial motions. If, upon receipt of the response, it is determined that no action should be taken at this time, the issue raised by this motion will be referred to the panel assigned to decide the merits of this appeal.

⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀ **Per Curiam**

# EXHIBIT "B"



Mary C. Schemery, Esquire
Michael J. Zicolello, Esquire
Kyle W. Rude, Esquire

Amy R. Boring, Esquire
Melissa R. Clark, Esquire

April 4, 2011

Lewis G. Parsenios
EMC Insurance Companies
PO Box 429598
Blue Ash, OH 45242-9598

> Via Facsimile Only: 513-221-8451

Donald Cole, Technical Specialist
Travelers
Construction Defect Unit
1200 American Road, 2nd Floor
Morris Plains, NJ 07950

> Via Facsimile Only: 877-786-5568

    RE:    Pennsylvania State University v. UHL Construction Company, Inc.
            Claim No: 195249
            Our File No: 550-2137

Dear Lewis and Don:

    I am writing to advise you of an issue related to our appeal which I had hoped to cure but could result in the dismissal of the appeal.

    As you know, following the bench trial, and the submission of the Proposed Findings of Fact and Conclusions of Law, the Trial Judge ruled in favor of Penn State and against Defendant UHL Construction but did not issue a decision as to NuFloor

Lewis G. Parsenios
Donald Cole, Technical Specialist
RE:   Pennsylvania State University v. UHL Construction Company, Inc.
      Claim No: 195249
      Our File No: 550-2137
April 4, 2011
Page 2

leaving the issue of indemnification to a later date.  Then, after additional Post Trial Submissions, the Court ruled against NuFloor and in favor of UHL Construction.

At that time, I recommended an appeal.  I had considered the possibility of filing Post Trial Motions, but since the Judge had two opportunities to address our issues and did not, it seemed that the filing of Post Trial Motion would be a meaningless exercise.  In fact, the Rule of Procedure dealing with Post Trial Relief bears no indicating that the filing of a Post Trial Motion is mandatory in cases where a party contemplates an appeal.  The text of Rule 27.1-Post Trial Relief-simply sets forth the remedies which may be requested in a Post Trial Motion, the time for filing of such Motions, and indicates such motions "may" be filed.

I also reviewed the Rules of Appellant procedure to insure that the Judge's Opinions and Verdicts were final appealable orders.  Pennsylvania Rules of Appellate Procedure 341 defines a final appealable order as "any order that: (1) disposes of all claims and of all parties. . ."  Upon reading the text of the rules, I was satisfied that the Trial Judge's Opinions and Verdict were final appealable orders.  I then filed the appeal.

The Trial Judge then requested a Statement of Matters Complaint of on Appeal so that he could prepare an opinion addressing the issues we were raising on appeal.  This is permitted by Pennsylvania Rules of Appellate Procedure 1925.

I was then very surprised to receive an Order from the Superior Court of March 14, 2011, which noted that we had failed to file a Post Trial Motion and that case law would deem the failure to file Post Trial Motions as fatal to the appeal and could result in the dismissal of the appeal.

Indeed, case law does require the filing of Post Trial Motions in both jury and bench trials in order to preserve issues for appeal.  However, this is not noted in the text of the Rules of Procedure.  Candidly, the appeals we pursue are few and for between.  The fact that the reading of the text of the rules would not apprise one of the necessity of filing a Post Trial Motion after a bench trial in order to preserve issues for appeal is, in my opinion, contrary to logic.  However, I have researched the issue and could not find any reported cases wherein the Court did not dismiss the appeal.

Lewis G. Parsenios
Donald Cole, Technical Specialist
RE:   Pennsylvania State University v. UHL Construction Company, Inc.
         Claim No: 195249
         Our File No: 550-2137
April 4, 2011
Page 3

---

I have filed a response to the Superior Court's Order. I have also filed a Motion for Extension, Nunc Pro Tunc, to file Post Trial Motions with the Trial Court. I have taken every measure to cure this defect in the appeal and I will notify you at once if I am advised of a decision pertaining to this issue.

In the meantime, as you know the Judge issued his 1925 Opinion and I did advise that based upon how the Judge has positioned the case, basically affording himself the luxury under changes to the Rules of Procedure to simply render his verdict almost as if it was a jury's verdict, rather than specifically address issues and adopting Findings of Fact and Conclusions of Law, I have little faith in the success of an appeal. I completely recognize that this may appear to be an attempt on my part to skirt the issue of the possibility of the appeal being dismissed. However, it is not.

We presented a very strong case at trial and, I believe any disinterested observer would have found in our favor. I have never experienced an adverse verdict in a case I fully expected to win. My initial urging to appeal may have been based more on pride and the belief that the Judge was intentionally ignoring our arguments and facts, than on logic. Since the Rules of Procedure, as amended in 2003, permit, but do not require, Judge's to issue decisions in bench trials much like jury verdicts without Findings of Fact and Conclusions of Law, the question of whether we would appeal should be evaluated just as if it was a jury verdict. I truly believe that if it was a jury verdict against us, an appeal would be highly unexpected, we would have accepted it as the result of an ill-informed, unintelligent group of jurors.

After my discussions as to this issue and upon disclosing the information set forth above to Law, he advised me that he wanted to take a wait and see approach to make sure whether the appeal would be dismissed. I have received the Court's Briefing Order, Appellants Brief and Reproduced Record are due on or before May 2, 2011. Please note that the Court may not address the issue of whether to dismiss the appeal until after we have briefed the merits or even until after oral argument.

I have enclosed copies of all of the orders and documents related to the possibility of the appeal being dismissed and the Motion for Extension, Nunc Pro Tunc, to file Post Trial Motions. While I readily acknowledge that case law requires the filing of Post Trial Motions to preserve an appeal of a Decision of a Judge in a bench trial, I am at a loss to understand how one is supposed to be aware of this fact when it is not

Lewis G. Parsenios
Donald Cole, Technical Specialist
RE:    Pennsylvania State University v. UHL Construction Company, Inc.
          Claim No: 195249
          Our File No: 550-2137
April 4, 2011
Page 4

_____

mentioned in the text of the Rules of Procedure.  While I am frustrated by the current context of the case, I am concerned that it may effect your views as to the opinions I provide.  It should be noted that in my email of February 3, 2011, wherein I recommended an appeal, I stated:

> In view of the Court's utter failure to explain NuFloor's role (or negligence) in causing the floor to fail, not to mention the Court's refusal even to address our issues related to the qualifications of PSU's expert to testify as an expert as to gypsum failures and spoliation of evidence, I believe we are left no choice but to appeal.

We now know by the filing of the Judge's 1925 Opinion that he is taking "cover" under the rules to permit him not to address issues and simply render his verdict as if a jury has rendered it.  My email of March 21, 2011, explained why based upon the positioning of the case and the Judge's 1925 Opinion, an appeal would not be successful.  The decision, however, is ultimately yours.  Unless instructed otherwise, I will continue to pursue the appeal with all possible effort and with the full knowledge that the result at trial was unjust.

                                        Very truly yours,

                                        Michael J. Zicolello

MJZ:cjl

Enclosures

cc:    Jerry E. Vondrell, Claims Manager
          Cincinnati Insurance Company