IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EMC INSURANCE COMPANY, et al., | : | |
|     Plaintiffs | : | |
| | : | No. 4:13-cv-00825 |
| v. | : | |
| | : | (Judge Kane) |
| MICHAEL J. ZICOLELLO, et al., | : | |
|     Defendants | : | |

## MEMORANDUM

Before the Court is Plaintiffs' motion for a protective order pursuant to Federal Rule of Civil Procedure 26(c)(d). (Doc. No. 21.) For the reasons that follow, the Court will grant the motion.

## I.    BACKGROUND

Plaintiffs, EMC Insurance Company and Nufloor Systems, bring this action against Michael J. Zicolello and the law firm Schemery and Zicolello, alleging malpractice in connection with a lawsuit filed in the Centre County Court of Common Pleas, Pennsylvania. (Doc. No. 1.) Plaintiffs allege that following a verdict against Plaintiffs, Defendants negligently filed an appeal directly to the Superior Court without first filing a motion for a new trial or a motion for judgment notwithstanding the verdict, as required by the Pennsylvania Rules of Civil Procedure. (Id. at 5.) After the Superior Court initially denied the appeal because of Defendants' failure to file the proper post-trial motions, Defendants filed an application to file his post trial motions nunc pro tunc, which the Court of Common Pleas granted. (Id. at 5-6.)

After filing the post-trial motions on Plaintiffs' behalf, Defendants again appealed the verdict to the Superior Court. (Id. at 6.) Plaintiffs assert that at this stage, they replaced Defendants with attorney John Hare. (Doc. No. 22 at 2.) The Superior Court denied this second

1

appeal, concluding that the Court of Common Pleas abused its discretion by permitting Defendants to file post-trial motions nunc pro tunc, and did not consider any substantive issues presented. (Doc. No. 1 at 6.) Judgment was entered and executed against Plaintiffs. (Id. at 6-7.)

On April 1, 2013, Plaintiffs filed this action against Defendants in the United States District Court for the Middle District of Pennsylvania. (Id.) Among the damages sought by Plaintiffs are attorney John Hare's fees related to the second failed appeal. (Doc. No. 24 at 9.) The parties are currently engaged in discovery, and Defendants seek to depose Hare regarding his communications with Plaintiffs. On December 16, 2013, Plaintiffs filed a motion seeking a protective order from the Court prohibiting Defendants from taking Hare's deposition, on the grounds that Hare's communications with Plaintiffs are protected by attorney-client privilege. (Doc. No. 21.)

## II. DISCUSSION

Plaintiffs contend that communications between Hare and Plaintiffs are covered by attorney-client privilege. (Doc. No. 22 at 6.) In response, Defendants appear to allege that the privilege does not apply because: (1) Hare and Defendants were co-counsel during the appeal process, and thus Plaintiffs' waiver of the privilege as to Defendants, by virtue of filing this malpractice suit, should also apply to its communications with Hare; (2) the e-mail between Defendants and Hare constituted inadvertent disclosure of the subject matter sought; and (3) the communications between Plaintiffs and Hare are relevant to issues of causation, as well as to Defendants' affirmative defense regarding failure to mitigate damages. (Doc. No. 24 at 4). Defendants also ask the Court to clarify whether the privilege is applicable to "documentary" evidence. (Id. at 2.)

2

### A. Attorney-client privilege

The Court has jurisdiction over this matter on the basis that complete diversity exists between the parties, and courts sitting in diversity should apply the privilege rules of the forum state in determining whether attorney-client privilege applies to the communications at issue. Rhone-Poulenc Rorer, Inc. v. Home Indem. Co., 32 F.3d 851, 861-62 (3d Cir. 1994). By Pennsylvania statute, "[i]n a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client." 42 Pa.C.S.A. § 5928. "[I]n Pennsylvania, the attorney-client privilege operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice. Gillard v. AIG Ins. Co., 15 A.3d 44, 59 (Pa. 2011).

The traditional elements of the privilege are as follows:

> (1) the asserted holder of the privilege is or sought to become a client;
> (2) the person to whom the communication was made
>     (a) is a member of the bar of a court, or his or her subordinate, and
>     (b) in connection with this communication is acting as a lawyer;
> (3) the communication relates to a fact of which the attorney was informed
>     (a) by his client
>     (b) without the presence of strangers
>     (c) for the purpose of securing primarily either
>         (i) an opinion of law or
>         (ii) legal services or
>         (iii) assistance in some legal proceeding, and
>     (d) not for the purpose of committing a crime or tort; and
> (4) the privilege has been
>     (a) claimed and
>     (b) not waived by the client.

Rhone-Poulenc Rorer, Inc, 32 F.3d at 862.

A party asserting attorney-client privilege bears the burden of proving that the privilege applies to the communication. Martin Marietta Materials, Inc. v. Bedford Reinforced Plastics, Inc., 227 F.R.D. 382, 389 (W.D. Pa. 2005). "Once a party demonstrates the existence of an attorney-client privilege regarding specific communications, then the party challenging the privileged communication bears the burden of demonstrating that a waiver of the attorney-client privileged communication has occurred." Id. at 390.

Applying the standard to the underlying facts, the Court finds that communications between Plaintiffs and their attorney, Hare, regarding their legal prospects on appeal satisfies the elements of the privilege described above, and therefore are covered generally by attorney-client privilege. Thus, the burden shifts to Defendants to show that Plaintiffs have waived the privilege.

### B. Waiver of privilege by filing malpractice suit

One theory of waiver Defendants rely upon is the exception for malpractice suits. "Where a client files a malpractice suit against her representation, this waives the privilege as to communications between the client and the lawyer." Rhone-Poulenc Rorer, Inc., 32 F.3d at 862. Because Plaintiffs filed a malpractice suit against Defendants, the waiver of privilege applies to any communications between Plaintiffs and Defendants which would otherwise be privileged. Here, however, Defendants seek to access communications between Plaintiffs and Hare, who represented Plaintiffs subsequent to the alleged malpractice. Because Plaintiffs did not file a lawsuit against Hare or attack his competence, there is no basis for the Court to find that Plaintiffs waived the privilege regarding confidential communications between Plaintiffs and Hare as a result of filing the malpractice action.

Defendants appear to ask the Court to nevertheless apply this rule of waiver because they and Hare were technically co-counsel during the appeal. (Doc. No. 24 at 2, 4.) The Court interprets Defendants' theory to be that Plaintiffs' waiver of privilege to communications with Defendants should also apply to Plaintiffs' communication with Hare, inasmuch as Hare and Defendants were "co-counsel." In support of their assertion that they were "co-counsel" to Hare, Defendants attach a single e-mail from Hare to Defendant Zicolello, in which Hare discusses the merits of the pending appeal. (Id. at 6-8.) Defendants further note in their brief that Defendants "continued to represent the Plaintiffs on related issues on a local basis." (Id. at 2.) However, Plaintiffs insist that Plaintiffs "replaced" Defendants with Hare. (Doc. No. 21 at 2.)

Some basic tenets of the attorney-client privilege guide the Court's analysis on this question. The attorney-client privilege "is intended to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." Swidler & Berlin v. United States, 524 U.S. 399, 403 (1998). Thus, once communications are shown to be privileged, the burden shifts to the opposing party to show waiver of the privilege. Martin Marietta Materials, Inc., 227 F.R.D. at 390. Attorney-client privilege belongs to the client, and only the client may waive it. Id. Therefore, "in determining the waiver of attorney-client privileged communications, it is the intent of the client that controls" the Court's analysis. Id.

Based on the scant information provided by the parties regarding the relationship between Defendants and Hare, the Court cannot divine the nature and extent of the collaboration between Defendants and Hare. Neither can the Court fairly assess whether Defendants were "co-counsel" to Hare during the appeal process, or whether the collaboration between lawyers

5

existed at the time the protected communications between Plaintiffs and Hare took place. Thus, because the Court cannot conclude that Defendants and Hare were indeed "co-counsel" at the time of the communication, or that Plaintiffs understood the nature of the collaboration to be such that they intended to waive privileged communications with Hare by filing a lawsuit against Defendants, the Court finds that Defendants have not met their burden of showing Plaintiffs waived their privilege regarding communications with Hare. Moreover, even if the Court concluded that Defendants and Hare were indeed co-counsel and this arrangement was apparent to Plaintiffs, it does not necessarily follow that these circumstances would constitute waiver of the privilege. See, e.g., Kroll & Tract v. Paris & Paris, 86 Cal. Rptr. 2d 78, 83 (Cal. App. 1999) (holding that waiver of privilege as to one co-counsel by virtue of filing a malpractice action does not apply to those co-counsel who were not sued).

  C.  **Waiver of privilege by inadvertent disclosure**

Defendants also state in their brief that "[t]he memo sent to Attorney Hare to Anthony Zicolello was not an inadvertent disclosure of information intended to be kept in confidence although it would otherwise constitute a waiver of the attorney-client privilege with respect to the subject matter at issue." (Doc. No. 24 at 4.) The Court construes this as Defendants arguing that, should the Court find no waiver of the attorney-client privilege by virtue of the working relationship between Defendants and Hare, the Court should consider the e-mail an inadvertent disclosure of information that serves to eliminate the privilege regarding Hare's communications with Plaintiffs.

It is true that the inadvertent disclosure of privileged information to outisde parties can waive the attorney-client privilege. See, e.g., Smith v. Allstate Ins. Co., 912 F. Supp. 2d 242,

6

246-47 (W.D. Pa. 2012). The Third Circuit has described the privilege as applying to any communication that satisfies the following elements: (1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client. In re Teleglobe Commc'ns Corp., 493 F.3d 345, 359 (3d Cir. 2007) (citing Restatement (Third) of the Law Governing Lawyers § 68 (2000)). "Privileged persons" include the client, the attorney(s), and any of their agents that help facilitate attorney-client communications or the legal representation. Id. § 70. Disclosure to agents retained by counsel to assist him or her in advising the client and handling legal matters does not operate as a waiver. Andritz Sprout-Bauer, Inc. v. Beazer E., Inc., 174 F.R.D. 609, 632 (M.D. Pa. 1997). The privilege attaches to agents and representatives of counsel whose services are necessary for effective representation of the client's interests. Id.

As Plaintiffs' attorney, Hare's communication to Defendants regarding the pending appeal provided Plaintiffs with legal assistance. Although the Court cannot ascertain whether the collaboration between Defendants and Hare was that of "co-counsel" or whether it consisted of anything more than this e-mail, it indicates that, at the very least, the e-mail represents a confidential communication between privileged persons in furtherance of the legal representation of Plaintiffs at the time the e-mail was sent, and Defendants were therefore not an "outside party" to whom this rule applies. The Court finds that regardless of the nature of the rest of the collaboration, this e-mail communication by Hare with Defendants, who had represented the Plaintiffs in the litigation up to that point, was to provide effective representation of the client. In other words, the e-mail was intentionally sent to a privileged party, not inadvertently disclosed to an outside party. Thus, the Court finds that the theory of inadvertent disclosure of

7

confidential information does not apply.

### D. Waiver of privilege by placing attorney's advice "in issue"

Plaintiffs' second theory is that "[t]he appellate prospect advice Attorney Hare provided to Plaintiffs[] is directly relevant to whether Attorney Zicolello caused Plaintiffs' alleged damages and whether Plaintiffs failed to mitigate damages because Plaintiffs have filed this legal malpractice suit." (Doc. No. 24 at 4.) A plaintiff can waive attorney-client privilege by asserting claims or defenses that put his or her attorney's advice "in issue" in the litigation. Rhone-Poulenc Rorer, Inc., 32 F.3d at 863. The advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney-client communication. Id. "Advice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner." Id.

Defendants assert that the communications and advice between Hare and Plaintiffs are relevant to a crucial causation issue in this litigation: whether the appeal would have been successful on the merits if Defendants had filed the proper post-trial motions. Although the Court agrees that the evidence is obviously relevant, relevance of a protected communication alone does not waive the privilege. See id. Here, Defendants seek Hare's confidential advice to his clients regarding their chances of success, in order to prove that the lost appeal was futile. In other words, it is Defendants, not Plaintiffs, who are attempting to prove a defense by virtue of the confidential communication between Plaintiffs and Hare. This does not comport with the definition of "in issue" provided by the Third Circuit for purposes of waiving the privilege for advice from an attorney. See id. ("Leaving to the client the decision whether or not to waive the

8

privilege by putting the attorney's advice in issue, we provide certainty that the client's confidential communications will not be disclosed unless the client takes an affirmative step to waive the privilege.") See also Fid. & Deposit Co. of Maryland v. McCulloch, 168 F.R.D. 516, 520 (E.D. Pa. 1996) ("Defendants' contentions are plainly insufficient . . . Fidelity asserts no claim or defense in its Complaint or in any of its Responses to Defendants' Counterclaims that rests on the advice of counsel, nor does it attempt to prove any claim or defense by disclosing such advice."). To the best of the Court's knowledge, Plaintiffs have not described or disclosed any of Hare's advice in support of their contention that they lost a strong opportunity to appeal due to Defendants' malpractice.

Defendants' next theory is that because Plaintiffs' seek attorneys fees owed to Hare, his advice is in issue and relevant to whether Plaintiffs failed to mitigate their damages. This argument runs into the same problem. Defendants seek to inquire into confidential communications between Plaintiffs and Hare in order to support their defense of failure to mitigate damages. However, because only Plaintiffs can place advice "in issue," Defendants cannot obtain this communication in order to support an anticipated affirmative defense.

To the extent it can be argued that Plaintiffs themselves placed the advice of Hare in issue by virtue of claiming such fees, the Court disagrees. Again, the Third Circuit's definition of "in issue" requires that the client attempt to prove the claim by "disclosing or describing an attorney-client communication." Rhone-Poulenc Rorer, Inc., 32 F.3d at 863. In stating a claim for attorney's fees, Plaintiffs have neither disclosed nor described their communications with Hare. Consistent with persuasive authority, the Court finds that a claim for attorney's fees in the context of a legal malpractice suit does not place "in issue" that attorney's advice, and does not

9

serve to destroy the privilege.  See Fischel & Kahn, Ltd. v. van Straaten Gallery, Inc., 727 N.E.2d 240, 244-45 (Ill. 2000) ("If raising the issue of damages in a legal malpractice action automatically resulted in the waiver of the attorney-client privilege with respect to subsequently retained counsel, then the privilege would be unjustifiably curtailed."); Rutgard v. Haynes, 185 F.R.D. 596, 599 (S.D. Cal. 1999) (noting in dicta that a plaintiff's claim for attorney's fees related to earlier litigation, standing alone, would likely not suffice to waive the privilege).  To hold to the contrary would run counter to the privilege's purpose of fostering "full and frank communication" between clients and attorneys.  See Swidler, 524 U.S. at 403.

### E. Documentary evidence

Defendants also ask the Court to clarify whether the privilege is applicable to "documentary" evidence.  (Doc. No. 24 at 2.)  Based on the Court's reasoning above, any and all documentary evidence regarding communications between any Plaintiffs and Hare is not admissible as covered by the privilege.

Finally, the Court notes that it does not address whether the privilege currently applies to the e-mail between Hare and Defendants, as the issue has not been directly raised by the parties, and the Court is unclear whether the parties dispute whether or not the e-mail is privileged.  Although the Court noted earlier in this memorandum that the e-mail was confidential between privileged parties at the time it was sent, the Court renders no opinion as to whether subsequent events have served to eliminate any attorney-client privilege that may have initially covered the e-mail.  Rather, the Court's memorandum exclusively addresses communications between Plaintiffs and Hare, and concludes that all such communications remain protected by the privilege.

Thus, the Court finds that all communications and advice between the Plaintiffs and Hare are protected by the attorney-client privilege, and Defendants have failed to show that Plaintiffs otherwise waived that privilege with respect to such communications. An order consistent with this memorandum follows.