# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EMC INSURANCE COMPANY, et al.,** : | |
|     **Plaintiffs** : | |
| : | No. 4:13-cv-00825 |
| **v.** : | |
| : | (Judge Kane) |
| **MICHAEL J. ZICOLELLO, et al.,** : | |
|     **Defendants** : | |

## MEMORANDUM

Before the Court are the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(a).  (Doc. Nos. 29, 33.)  For the reasons that follow, the Court will grant Defendants' motion for summary judgment, deny Plaintiffs' motion for summary judgment, and judgment will be entered in favor of Defendants.

## I.   BACKGROUND

On April 15, 1998, UHL Construction Company ("UHL") entered into a contract with Penn State University to serve as general contractor in building Ohio Hall on the Penn State campus located in Eric, Pennsylvania.  (Doc. No. 35 ¶ 1.)  In August 2008, UHL entered into a subcontract with Plaintiff NuFloor Systems ("NuFloor"), which required NuFloor to supply labor, material and equipment and do all work necessary to furnish and install Gypsum underlayment in Ohio Hall.  (Id. ¶ 2.)  It appears undisputed that a Gypsum product with a compressive strength of at least 2,500 PSI was required by the contract specifications and by specific instruction of the architect working on behalf of Penn State.[1]  (See id. ¶¶ 4-7; Doc. No.

---

[1] The original contract specifically called for "Gyp-Crete 2000" underlayment "to attain typical compressive strengths of 2,500 PSI."  (Doc. No. 33-4 at 17.)  Rapid Floor Plus underlayment was ultimately used instead, which has a compression strength of 1,650-2,500 PSI.  (Doc. No. 35 ¶ 7.)  It appears to the Court that the parties disagree on who is at fault for installing

42 ¶¶ 4-8; Doc. No. 33-4 at 17; Doc. No. 31-3 at 48-50; Doc. No. 33-8 at 117-18.) On April 9, April 10, and May 19, 1999, NuFloor installed Rapid Floor Plus as the Gypsum underlayment in Ohio Hall. (Doc. No. 25 ¶ 10.) The Russell Carpet Company then installed wall-to-wall carpeting. (Id. ¶ 12.). Problems subsequently arose with the carpeting, and efforts to correct the problems over the next few years failed to remedy the situation. (Id. ¶¶ 13-15.) Eventually, Penn State decided to use new vendors to replace the carpeting in Ohio Hall. (Id. ¶ 24.)

On June 31, 2007, Penn State filed a complaint against UHL in the Court of Common Pleas of Centre County, Pennsylvania. (Doc. No. 33-6 at 2.) On March 7, 2008, UHL filed a third party complaint joining NuFloor and Russell Carpeting Company. (Doc. No. 33-7 at 2.) Count One of UHL's third party complaint alleged breach of contract against NuFloor: specifically, that NuFloor breached the portion of the contract that called for NuFloor to "furnish and install the Underlayment . . . as stipulated in the Specifications . . . and in accordance with the General Conditions, Bid Documents, and their supplements, and/or as shown on the Contract Drawings . . . ." (Id. ¶ 25-28.) Count Two sought indemnification pursuant to a clause in the subcontract that required NuFloor to hold UHL harmless "from any and all damages caused wholly or in part by any of [its] employees, equipment or agents." (Id. ¶¶ 13, 29-32.) Defendants Michael J. Zicolello and Schemery and Zicolello Attorneys at Law represented Plaintiff NuFloor in the Centre County action. (Doc. No. 35 ¶¶ 30-31; Doc. No. 42 ¶¶ 29-31.)

On February 9-11, 2010, a bench trial was held before Judge Jonathan D. Grine in the Court of Common Pleas of Centre County, Pennsylvania. (Doc. Nos. 31-1 ¶ 8, 35 ¶ 32.) On

---

substandard underlayment. For example, Plaintiffs point to record evidence that UHL Project Foreman Albert Hengelsberg knew the Rapid Floor Plus, installed by NuFloor, would be insufficient to reach the required 2,500 PSI. (See Doc. No. 35 ¶¶ 5-9; Doc. No. 42 ¶¶ 4-9.)

September 14, 2010, Judge Grine entered a verdict in favor of Penn State against UHL, with damages totaling $109,973.25. (Doc. Nos. 31-1 ¶ 9; 35 ¶ 35.) UHL then sought to recover from NuFloor pursuant to their subcontract, and on January 14, 2011, Judge Grine ordered NuFloor to pay UHL the $109,973.25, in addition to UHL's attorney's fees of $79,771.73. (Doc. Nos. 31-1 ¶ 10; 35 ¶¶ 36-37.)

On February 14, 2011 Defendant Michael J. Zicolello appealed the judgment to the Pennsylvania Superior Court. (Doc. Nos. 31-1 ¶ 10; 35 ¶ 39.) On March 14, 2011, the Superior Court ordered NuFloor to show cause why the appeal should not be dismissed for failure to file post-trial motions pursuant to Rule 227.1 of the Pennsylvania Rules of Civil Procedure. (Doc. Nos. 31-1 ¶ 10; 35 ¶ 40.) On March 31, 2011, the Superior Court dismissed NuFloor's appeal without prejudice to Plaintiff seeking leave from the trial court to file post-trial motions nunc pro tunc. (Doc. Nos. 31-1 ¶ 13; 35 ¶ 42.) The trial court allowed Plaintiff to file post-trial motions but, on June 3, 2011, denied the merits of NuFloor's post-trial motion. (Doc. Nos. 31-1 ¶ 18; 35 ¶¶ 44-45.) Subsequently, Plaintiffs again appealed to the Superior Court. (Doc. Nos. 31-1 ¶ 20; 35 ¶ 47.) However, on August 9, 2012, the Superior Court found that the trial court abused its discretion by permitting Plaintiffs to file post-trial motions nunc pro tunc, and accordingly dismissed the appeal for failure to file timely post-trial motions. (Id. ¶ 49.)

On April 1, 2013, Plaintiffs NuFloor and EMC Insurance Company filed a legal malpractice complaint against Defendants Michael J. Zicolello, and Schemery and Zicolello Attorneys at Law, alleging professional malpractice arising out of their representation of Plaintiffs. (Doc. No. 1.) Primarily, Plaintiffs allege that Judge Grine committed reversible errors in entering judgment against NuFloor and in favor of UHL, and that an appeal to the

Superior Court would have been successful if the ability to appeal had not been forfeited by Defendant Zicolello's failure to file post-trial motions. (Id.) The complaint also contains allegations that Defendants committed malpractice prior to and during trial. (Id.) On February 19, 2014, Defendants filed a motion for summary judgment. (Doc. No. 29.) On February 24, 2014, Plaintiffs filed a cross-motion for partial summary judgment, seeking judgment regarding liability only. (Doc. No. 33.)

## II.   LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). Upon a motion for summary judgment, the Court's inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury, or whether it is so one-sided that one party must prevail as a matter of law. Id. at 251-52. In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the

motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Grp. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted. Celotex, 477 U.S. at 322. With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant summary judgment when the non-movant's evidence is merely colorable, conclusory, or speculative. Anderson, 477 U.S. at 249-50. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Further, a party may not defeat a motion for summary judgment with evidence that would not be admissible at trial. Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 (3d Cir. 1999).

**III.   DISCUSSION**[2]

---

[2] In support of their motion for summary judgment, Defendants seek to offer into the record an e-mail that was written by John Hare, counsel who represented Plaintiffs after the trial concluded, and sent to Zicolello, regarding the Plaintiffs' chances on appeal. (See Doc. No. 31-2 at 75-78.) Defendants assert that this e-mail is strong evidence supporting their position that Judge Grine's findings would not have been reversed on appeal. The parties dispute the admissibility of this evidence; Plaintiffs argue that this e-mail is not admissible as it is covered by attorney-client privilege.

Because the Court finds that there is ample evidence in the record to support Judge Grine's findings regardless of any of the opinions expressed in Mr. Hare's e-mail, his e-mail is not material to the Court's disposition of the cross-motions for summary judgment. Accordingly, the Court will decline to address the admissibility of the e-mail, and will not consider the e-mail or its contents in addressing the parties' cross-motions for summary judgment.

First, the Court will address Plaintiffs' claims that Defendants committed legal malpractice prior to and during trial. Second, the Court will address Plaintiffs' claims that Defendants committed legal malpractice by failing to properly file post-trial motions with the trial court, thereby depriving Plaintiffs of the ability to pursue their allegedly meritorious grounds of appeal.

### A. Trial-level negligence

In moving for summary judgment, Defendants claim that to the extent Plaintiffs' complaint alleges negligence prior to and during trial,[3] Defendants are entitled to summary judgment because (1) allegations of negligence prior to and during the trial are not supported by expert testimony, and (2) such claims are barred by the statute of limitations. (Doc. No. 30 at 3-5.) Plaintiffs respond that the statute of limitations does not bar this action because, applying the discovery rule,[4] "it is undisputed that the first notice to [Plaintiffs] of any problem with the appeal filed by [Defendant] from the verdict entered against NuFloor was April 4, 2011." (Doc. No. 37 at 10.) Plaintiffs also argue that "contrary to Defendants' assertion in his Brief, the claims of [Defendant] Zicolello's negligence are set forth in the [expert] report of retired Judge Klein."[5] (Id. at 12.) Defendants respond by asserting that, "Plaintiffs may have misconstrued

---

[3] This includes allegations that Defendants were negligent in advising Plaintiffs to proceed in a non-jury, rather than jury, trial, failing to object to venue, and failing to object to various testimony provided during trial. (See Doc. No. 1 ¶¶ 46-56.)

[4] The discovery rule "provides that the statute of limitations does not begin to run until the injured party is aware or reasonably should be aware of his injuries and its cause." Garcia v. Cmty. Legal Servs. Corp., 524 A.2d 980 (1987).

[5] In support of their claim that Defendants were negligent in failing to file timely post-trial motions, Plaintiffs have filed the expert report of the retired Judge Richard B. Klein, who served eight years on the Pennsylvania Superior Court. (See Doc. No. 33-8 at 103-04.)

6

Defendants' Statute of Limitations argument as applicable to <u>all</u> of the claims at issue rather than the Plaintiffs' unsupported claims of trial level negligence resulting in the entry of judgment against NuFloor from which the appeal was taken." (Doc. No. 43 at 5) (emphasis added).

The Court agrees that it appears Plaintiffs may have simply misinterpreted this aspect of Defendants' motion as inclusive of all of Plaintiffs' claims, rather than merely those arising out of alleged pre-trial and trial-level negligence. First, any claims based on alleged negligence prior to judgment are not supported by the expert report of Judge Klein, whose report speaks entirely to the premise that Defendants' failure to file necessary post-trial motions fell below accepted professional standards. (Doc. No. 33-8 at 103-104.) Judge Klein's report contains no opinion as to any allegedly negligent actions taken by Defendants before or during the trial. (<u>See id.</u>) Further, Plaintiffs do not discuss such claims in their briefings or point to any record evidence in support of the complaint's allegations of pre-trial and trial-level negligence. Accordingly, it appears to the Court that Plaintiffs are not in fact pursuing the allegations in the complaint regarding negligence prior to and during trial. Because there is no evidence in the record supporting such claims, the Court finds that Defendants are entitled to summary judgment relating to any allegations concerning negligence prior to judgment, regardless of whether the statute of limitations bars such claims.

By contrast, it does not appear to the Court that Defendants intended to argue that either the statute of limitations or a lack of expert testimony on the appropriate standard of care entitles them to summary judgment on claims arising out of Defendants' later failure to file post-trial motions. Even if Defendants did argue this point, the Court agrees with Plaintiffs that to the

extent they allege malpractice arising out of Defendants' allegedly negligent failure to file an appeal, such claims are clearly <u>not</u> barred by the two year statute of limitations, as the record indicates that they learned there was a problem with the appeal and the failure to file post-trial motions on April 4, 2011; Plaintiffs' complaint was filed April 1, 2013, and therefore was within the two-year statute of limitations applicable to such a claim.[6]  See <u>Bariski v. Reassure Am. Life Ins. Co.</u>, 834 F. Supp. 2d 233, 237-38 (M.D. Pa. 2011) (citing <u>Wilson v. El-Daief</u>, 964 A.2d 354, 359 (Pa. 2009)) ("The discovery rule will serve to toll the applicable limitations period until a plaintiff knew, or in the exercise of reasonable diligence should have known, that he has been injured and by what cause.").  Plaintiffs' claims arising out of the failure to file post-trial motions also do not fail for a lack of expert testimony regarding the standard of care, as Judge Klein speaks precisely to this point in his report. (Doc. No. 33-8 at 103-104.)  Indeed, as discussed in section C, <u>infra</u>, Defendants concede that the failure to file post-trial motions was negligent.

### B.      Failure to appeal[7]

The parties move for summary judgment on Plaintiffs' legal malpractice claims related to the appeals process.  Plaintiffs allege that Defendants failed to exercise the ordinary skill,

---

[6] The Court observes that, in Pennsylvania, a legal malpractice action may be brought in either contract or tort.  See <u>Wachovia Bank, N.A. v. Ferretti</u>, 935 A.2d 565, 571 (Pa. Super. Ct. 2007).  A two-year limitations period applies to the negligence claim and the four-year limitations period applies to the breach of contract claim.  See <u>id.</u>  Neither party appears to assert that the four-year period should apply here and, accordingly, the Court will apply the two-year limitations period.  Moreover, such a distinction is relevant because the Court finds above that the claims arising out of the failed appeal fall within the two-year period for negligence claims.

[7] In support of their argument that the appeal would have been successful absent the failure to preserve the appeal through post-trial motions, Plaintiffs offer the expert report of Judge Abraham J. Gafni.  (Doc. No. 33-8 at 107-120).  In support of Defendants' position that the Superior Court would have affirmed the findings of the trial court, Defendants offer the expert report of Judge Joseph A. Del Sole.  (Doc. No. 31-3 at 46-57.)

knowledge and care associated with members of the profession by negligently failing to preserve a chance to appeal by properly filing post-trial motions. (Doc. No. 34.) Plaintiffs further allege that this negligence injured them by depriving them of two meritorious defenses they could have sought on appeal: (1) that the evidence was insufficient to support the findings of the trial court, and (2) that the trial court erred in ordering NuFloor to indemnify UHL. (Id.)

A legal malpractice claim requires proof of the following elements: 1) employment of the attorney; 2) the failure of the attorney to exercise ordinary skill and knowledge; and 3) that such negligence was the proximate cause of damage to the plaintiff. Kituskie v. Corbman, 714 A.2d 1027, 1029 (Pa. 1998). This requires "proof of actual loss rather than a breach of a professional duty causing only nominal damages, speculative harm or the threat of future harm."
Id. at 1030. "In essence, a legal malpractice action in Pennsylvania requires the plaintiff to prove that he had a viable cause of action against the party he wished to sue in the underlying case and that the attorney he hired was negligent in prosecuting or defending that underlying case (often referred to as proving a 'case within a case')." Id. In so doing, "[a] plaintiff must initially establish by a preponderance of the evidence that he would have recovered a judgment in the underlying action." Id.

The parties do not appear to dispute that elements one and two are met here. As mentioned above, in support of their claim that Defendants were negligent in failing to file timely post-trial motions, Plaintiffs have filed the expert report of the retired Judge Richard B. Klein. (Doc. No. 33-8 at 103-04.) Judge Klein opines that Defendants' failure to know and to follow the rules regarding the filing of post-trial motions in Pennsylvania constitutes legal

9

malpractice, and that because Defendant Zicolello admitted he rarely filed appeals, it was his "obligation to either ask anyone with experience in appeals what the procedure was or to do a quick, minimal search of the case law which would make the requirement clear." (Id.) In their brief in opposition, Defendants state that they do not contest the opinion of Judge Klein in this regard, and the Court agrees that Defendants' actions fell below acceptable professional standards. See Collas v. Garnick, 624 A.2d 117, 120 (Pa. Super. Ct. 1993) ("A lawyer will be found to be negligent if he or she fails to possess and exercise that degree of knowledge, skill and care which would normally be exercised by members of the profession under the same or similar circumstances.").

Thus, only the third element, whether the Defendants negligence proximately caused Plaintiffs harm, is in dispute. Accordingly, the question presented by the parties' cross-motions for summary judgment is whether the underlying appeals would have been successful had Defendants not negligently failed to preserve the opportunity to appeal to the Superior Court. The parties agree that this question – whether Plaintiffs would have succeeded on appeal in the "case within a case" – is a question of law for the Court to decide on summary judgment. (See Doc. No. 34 at 18; Doc. No. 41 at 4; see also Scaramuzza v. Sciolla, No. 04-1270, 2006 WL 557716, at *7-8 (E.D. Pa. Mar. 3, 2006) ("[W]here the relevant underlying proceeding was decided by a court sitting without a jury, then the 'case within a case' of the legal malpractice action should also be decided by a court rather than a jury.").)

Before proceeding to the question of whether an appeal in the Superior Court would have succeeded, the Court must set forth the standard of review that would have been applied on appeal. When reviewing the results of a non-jury trial, the Superior Court gives great deference

10

to the factual findings of the trial court. Recreation Land Corp. v. Hartzfeld,, 947 A.2d 771, 774 (Pa. Super. Ct. 2008); see also Warner-Vaught v. Fawn Twp., 958 A.2d 1104, 1109 (Pa. Cmwlth. Ct. 2008) ("[T]he trial judge's findings in a bench trial . . . are entitled to the same deference as a jury verdict[.]"). Questions of credibility and conflicts in evidence are for the trier of fact to resolve. Miller v. Brass Rail Tavern, Inc., 702 A.2d 1072, 1076 (Pa. Super. Ct. 1997). The Superior Court must simply "determine whether the trial court's verdict is supported by competent evidence in the record and is free from legal error." Hartzfeld, 947 A.2d at 774. The findings of the trial court will only be overturned on appeal if there is insufficient evidence or if the trial court committed an error of law. " Rizzo v. Haines, 555 A.2d 58, 61 (Pa. 1989). Stated another way, upon review, "the test is not whether we would have reached the conclusion of the trial court, but rather whether we reasonably could have reached the same result." Id.

With these standards in mind, the Court will proceed to address the merits of Plaintiffs' two asserted grounds for appeal of the trial court's findings.

### 1. Sufficiency of evidence

Plaintiffs argue that their appeal would have been successful on the grounds that there was insufficient evidence to support Judge Grine's finding that (1) UHL breached the contract with Penn State and that (2) NuFloor breached the subcontract with UHL. (Doc. No. 34 at 29-31.) Plaintiffs contend that "the trial evidence did not demonstrate how NuFloor's work was defective, negligent or otherwise improper." (Id.) Plaintiffs also contend that there was no expert testimony to support Penn State's theory that there was too much water used in the gypsum mixture. (Id.) Defendants argue that the record contains ample support for the finding that the contracts were breached when NuFloor failed to install the underlayment in a

workmanlike manner.  (Doc. No. 41 at 11-12.)

As noted by Judge Grine, a breach of contract action requires (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages.  CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999).  The Court finds there is considerable evidence in the record that justified the trial court's finding that UHL breached the terms of contract with Penn State, and that NuFloor breached the terms of its subcontract with UHL.[8]  First, as outlined in the expert report of Judge Del Sole, it appears that NuFloor's owner admitted at trial that the gypsum it installed in Ohio Hall did not meet the requirement that the product have a minimum of 2,500 PSI.  (Doc. No. 31-3 at 51.)  Accordingly, the Court agrees with Judge Del Sole that this fact alone is sufficient to find that the parties were in breach of the terms of the contracts.  (See id. at 50-51.)  There was also evidence that NuFloor's owner knew that the gypsum installed would deteriorate in the face of heavy traffic.  (Id.)  Additionally, there was witness testimony that the underlayment was "powder[ed]" and "crumbl[ed]", and that it was "soft" and "weak."  (Id.)  In light of this evidence, the Court finds that Judge Grine did not, as Plaintiffs argue, improperly apply the theory of res ipsa loquitur[9] to the case; rather, the foregoing facts provide an ample factual basis

---

[8] See Doc No. 33-7 at 29 ("The Court finds that the contract [between UHL and NuFloor] . . . was breached when NuFloor installed substandard underlayment in Ohio Hall.") ; id. at 65 ("This case was a breach of contract case, and as such there it was simply required that Penn State and UHL show that the contracts they had were violated . . . . [W]ithout any expert testimony it was obvious that UHL's contract with NuFloor was . . . breached.")

[9] Res ipsa loquitur "is a rule that provides that a plaintiff may satisfy his burden of producing evidence of a defendant's negligence by proving that he has been injured by a casualty of a sort that normally would not have occurred in the absence of the defendant's negligence." Quinby v. Plumsteadville Family Practice, Inc., 907 A.2d 1061, 1071 (Pa. 2006).

for Judge Grine's findings. Accordingly, the Court does not find, as Plaintiffs insist, that any additional expert testimony was necessary to support Judge Grine's findings that when NuFloor installed a defective underlayment (1) the contract between Penn State and UHL was breached, and (2) the contract between UHL and NuFloor was breached.[10]

Moreover, even assuming, arguendo, that the Court found the above evidence was insufficient to meet the burden at trial, Plaintiffs' argument that there was no expert testimony in support of Penn State's theory of the case is unavailing because the record before the Court indicates that there was in fact expert testimony. Specifically, Penn State offered the expert testimony of Mr. Dennis Smale. Plaintiffs make the blanket assertion in their brief that Mr. Smale was "unqualified" to testify as an expert (Doc. No. 34 at 29), but they raised these same objections to the trial court and Judge Grine rejected them.[11] (See Doc. No. 31-3 at 4-5; Doc.

---

[10] The Court does not disagree with Judge Gafni's position that expert testimony is sometimes used to prove breach of contract. (Doc. No. 33-8 at 113.) See Turney Media Fuel, Inc. v. Toll Bros., Inc., 725 A.2d 836, 839-40 (Pa. Super. Ct. 1999). However, the Court does not find that such testimony was a strict requirement here, particularly in light of NuFloor's admission that the gypsum did not meet the contractual requirements of a strength of at least 2,500 PSI.

[11] The Court agrees with Judge Gafni's opinion in his expert report that Judge Grine's treatment of Mr. Smale's expert testimony is confusing, but finds that the record is insufficient to draw the conclusion advocated by Plaintiffs that there was a total absence of expert testimony. On one hand, Judge Grine wrote that Mr. Smale's testing regarding compression strength was flawed: "there are no reliable tests available from any source to determine the compressive strength of the gypsum concrete." (Doc. No. 33-7 at 22.) On the other hand, Judge Grine also later reaffirmed that Mr. Smale's testimony was properly admitted, noting that "the trial court is satisfied that Plaintiff's expert was properly qualified" (Doc. No. 33-8 at 99), and that "the Court believes Mr. Smale's testimony was properly admitted." (Doc. No. 33-7 at 65.)

If Plaintiffs are asking the Court to infer from Judge Grine's finding regarding Mr. Smales' compression testing that it necessarily follows that none of Mr. Smale's other testimony was proper, the Court finds the scant record in front of it does not support such a conclusion. The Court emphasizes that the burden in this malpractice case is on the Plaintiffs. See Kituskie, 714 A.2d at 1030. Despite this burden, the Plaintiffs have not provided the Court with Mr. Smale's

No. 33-7 at 65; Doc. No. 33-8 at 99). Moreover, Plaintiffs have not asked this Court to reconsider Judge Grine's findings regarding Mr. Smale's qualifications and have not briefed the issue of his qualifications. Accordingly, the issue is not before this Court.[12] Lastly, although, as Plaintiffs point out, Judge Grine expressly stated in his order regarding Plaintiffs' post-trial motions that he "did not rely on [Mr. Smale's] testimony in deciding the verdict" and that Mr. Smale's testimony "simply provided additional testimony above and beyond what was necessary to prove their case," it remains true that "[t]he Superior Court may affirm the action of the trial court for reasons other than those relied upon by the trial judge." Smith v. Smith, 653 A.2d 1259, 1266 (Pa. Super. Ct. 1995). Accordingly, even if Judge Grine did not rely on Mr. Smale's testimony in rendering a verdict, the Court finds that the presence of his expert testimony is further basis to reject Plaintiffs' claims that the Superior Court would not have affirmed the judgment on appeal.

In making this finding, the Court is cognizant of the conflicting evidence presented to Judge Grine. For example, there was evidence that UHL's project manager knowingly allowed

---

full testimony, but have merely selected snippets of the trial transcript (see Doc. No. 33-5), and, accordingly the Court does not know how and to what extent Mr. Smale's testimony rested on the invalid testing. Stated another way, the Court finds that to the extent Plaintiffs argue that there was no expert testimony related to Penn State's theory of the case, they have not met their burden.

[12] Moreover, any such challenge to Judge Grine's decision that Mr. Smale was a qualified expert would face a stringent burden on review in the Superior Court. See Miller, 664 A.2d at 528 ("The qualification of an expert witness rests within the sound discretion of the trial judge, and furthermore, absent an abuse of that discretion, the decision of the trial judge should be upheld").

NuFloor to use underlayment that would not be strong enough. (See Doc. No. 33-8 at 117-19.) There was also expert testimony that there were potential causes of the problem unrelated to NuFloor, such as exposure to moisture through water cleaning following the completion of NuFloor's installation. (Id. at 113-15.) However, Judge Grine was the sole fact-finder in this bench trial, and the Superior Court would not have re-weighed the evidence because whether another Court acting as fact-finder would have found differently is not the appellate court's inquiry. See Hartzfeld, 947 A.2d at 774 ("When reviewing the results of a non-jury trial, we give great deference to the factual findings of the trial court . . . . We must determine whether the trial court's verdict is supported by competent evidence in the record and is free from legal error."). Because the Court finds there was ample evidence in the record to support Judge Grine's findings, the Court concludes that an appeal to the Superior Court on these grounds would not have been successful.

### 2. Indemnification

Plaintiffs alternatively argue that Judge Grine improperly ordered NuFloor to indemnify UHL, and that a properly filed appeal on this issue would have been successful. (Doc. No. 34 at 24-29.) Specifically, Plaintiffs assert that Pennsylvania law is clear that where a party seeks indemnification against its own negligence, the indemnification language in the contract must be clear and unequivocal; courts refer to this as the "Perry-Ruzzi" rule. (Id.) See Mace v. Atl. Ref. Mktg. Corp., 785 A.2d 491, 494 (Pa. 2001); Ruzzi v. Butler Petroleum Co., 588 A.2d 1, 4 (Pa. 1991); Perry v. Payne, 66 A. 553 (Pa. 1907). Plaintiffs argue that because there is no clear language in the contract expressing an intent to indemnify UHL for UHL's own negligence, and because the record is full of evidence that UHL was itself negligent, the order of indemnification

was improper. (Id. at 24-29.) Defendants argue that Perry-Ruzzi does not apply here because Judge Grine did not order NuFloor to indemnify UHL pursuant to an indemnity provision like those considered in cases applying the Perry-Ruzzi rule; rather, Judge Grine merely found that NuFloor had breached its contract with UHL and awarded damages accordingly. (Doc. No. 41 at 10-12.)

The Court agrees with Defendants and finds Judge Grine did not err in failing to apply the Perry-Ruzzi rule in entering judgment against NuFloor. The cases cited by Plaintiffs all apply Perry-Ruzzi to similar contractual indemnity provisions, which Judge Del Sole refers to as "Indemnification and Hold Harmless" provisions[13] in his expert report. See, e.g., Jacobs Constructors, Inc. v. NPS Energy Services, Inc., 264 F.3d 365 (3d Cir. 2001); Integrated Project Servs. v. HMS Interiors, Inc., 931 A.2d 724, 726 (Pa. Super. Ct. 2007). However, the record before the Court indicates that Judge Grine did not order indemnification to UHL under a similar indemnity provision. Rather, he ordered that NuFloor pay UHL pursuant to Paragraph 15 in the NuFloor/UHL subcontract, which provided that: "[a]ll Subcontractor's work will be done in accordance with the best standard practice . . . any work performed will be guaranteed as to

---

[13] For example: "To the fullest extent permitted by law with respect to the work covered by the Subcontract, Subcontractor agrees to defend, indemnify, save and hold harmless, the Owner and Contractor, and all their affiliates, parents, subsidiaries, divisions, directors, officers, agents, heirs, assigns, successors-in-interest, representatives and employees ("Indemnitees"), from and against the following: All claims, liabilities, demands, damages, losses, costs and expenses, including reasonable attorneys' fees, awards, fines and judgments, in law or in equity, of every kind and nature whatsoever ("Claims"), arising by reason of personal injury, the death of or bodily injury to persons (including employees of the subcontractor), design defects (if design originated from subcontractor), damages or destruction of property or the loss of use thereof, arising out of or alleged to have arisen out of in whole or in part by, or in connection with, Subcontractor's operations to be performed under this Subcontract . . ." Jacobs Constructors, Inc. v. NPS Energy Servs., Inc., 264 F.3d 365, 370 (3d Cir. 2001).

workmanship as well as materials and any work deemed imperfect or improper for any reason will be repaired or replaced as directed without additional cost to UHL Construction Company, Inc." (Doc. No. 33-7 at 28-29.) Judge Grine concluded that this provision of the contract "was breached when NuFloor installed substandard underlayment in Ohio Hall." (Id. at 29) (emphasis added.)

The Court finds, first, that this provision is not an indemnity arrangement like the provisions encapsulated by the Perry-Ruzzi rule. It makes no promise to indemnify UHL for underlying claims brought by third parties. Rather, it is distinct in form and function in that it is a guarantee that the work will meet a certain level of quality, a guarantee Judge Grine expressly found NuFloor breached. (See Doc. No. 33-7 at 27-30.) See Mace, 785 A.2d at 496 ("[The] Perry-Ruzzi rule is a rule of contract interpretation for clauses that relieve a party of responsibility for its own negligence, which is applied only in the unique circumstances of an indemnity arrangement."). The Court finds no need to apply the Perry-Ruzzi principles in conjunction with Judge Grine's breach of contract award, and finds Plaintiffs' arguments to the contrary unavailing. For example, in support of Plaintiffs' position, Judge Gafni cites the Pennsylvania Law Encyclopedia's definition of indemnity, which provides that "indemnity is a right injuring to one who, without active fault, is compelled by reason of legal obligation to pay damages occasioned by the active fault of another and for which he or she is secondarily liable." (Doc. No. 41-1 at 4) (emphasis added.) However, Judge Grine expressly found NuFloor was at fault; i.e., that it breached the contract by installing defective underlayment. (See Doc. No. 33-7 at 29.)

Secondly, the Court's finding is also compelled by the fact that the subcontract between

NuFloor and UHL does in fact contain an indemnity provision similar to the one considered by courts applying the Perry-Ruzzi rule, but Judge Grine did not apply it. Specifically, in UHL's third party complaint seeking damages from NuFloor, it brought two separate counts: (1) a breach of contract claim alleging that NuFloor breached the contract with UHL by failing to install the underlayment in a good and workmanlike manner, and (2) an indemnification claim arising out of Paragraph 26 in the subcontract, which provides that "[t]he subcontractor will hold the general contractor harmless from any and all damages caused wholly or in part by any of his employees, equipment, or agents." (See Doc. No. 33-4 at 29.) However, Judge Grine expressly found NuFloor breached Paragraph 15 of the contract, which guaranteed "workmanship;" he did not award indemnification pursuant to the "hold harmless" clause at Paragraph 26 or refer at all to that provision. (Doc. No. 33-7 at 27-30.) Stated another way, it appears that Judge Grine found that NuFloor had to pay damages to UHL arising out of its breach of contract, and not pursuant to any contractual provision though which UHL sought indemnification for its own negligence. Judge Grine could have opted to apply the indemnification provision in awarding judgment at Paragraph 26 of the subcontract, but he did not. Rather, he wrote that NuFloor breached their obligations under the subcontract. (See Doc No. 33-7 at 29.) Accordingly, there is no merit to the contention that Judge Grine improperly failed to apply indemnification principles to his breach of contract determination and that an appeal would have been successful on these grounds.

      The Court reiterates that it must determine only whether an appeal to the Pennsylvania Superior Court would have been successful. As noted by Judge Grine, a breach of contract action requires "the existence of a contract, including its essential terms, a breach of duty

18

imposed by the contract, and damages resulting from breach of contract." See CoreStates Bank, N.A., 723 A.2d at 1058.  Judge Grine wrote that Paragraph 15 of the contract "was breached when NuFloor installed substandard underlayment in Ohio Hall." (Doc. No. 33-7 at 29.)  He further found that "[s]ince NuFloor was the entity that laid this subflooring, they were responsible, under their contract with UHL, to repair or replace the substandard subflooring. Since they did not, they are liable to UHL for the . . . Judgment in favor of Penn State which constitute the damages needed in order to bring a successful breach of contract action." (Id.) The Court finds no error in Judge Grine's application of these breach of contract principles, and therefore no reason to conclude it would have been overturned by the Superior Court.  See Warner-Vaught, 958 A.2d at 1109 ("The trial judge's findings in a bench trial . . . are entitled to the same deference as a jury verdict and can be rejected only if the record does not support the findings.").

     Lastly, Plaintiffs also argue that Judge Grine actually made an indemnification analysis rather than a breach of contract analysis in his order entering judgment against NuFloor. (Doc. No. 44 at 4.)  The understandable confusion over this point arises from Judge Grine's seemingly interchangeable use of "breach of contract" and "indemnity" in his order. (See Doc. No. 33-7 at 27-30.)  As a result, it is somewhat difficult to resolve this point.  However, the Court finds this distinction irrelevant for purposes of the cross-motions for summary judgment.  First, although the Court agrees that Judge Grine's use of the word "indemnity" is confusing, it remains true that Judge Grine unequivocally stated, in both his orders of January 14, 2011 and June 3, 2011, that

he found NuFloor breached its contract with UHL.[14] Moreover, the Court agrees with Judge Del Sole that this distinction is somewhat irrelevant because the Superior Court can affirm a judgment for any valid reason, and a finding that NuFloor owed damages because it breached Paragraph 15 of the subcontract by installing substandard underlayment is supported by the evidence and is therefore grounds for upholding the judgment against NuFloor. See Pa. Dep't of Banking v. NCAS of Del., LLC, 948 A.2d 752, 761-62 (Pa. 2008) ("[A]ppellate courts are not limited by the specific grounds raised by the appellee or invoked by the court under review, but may affirm for any valid reason.").

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs have not met their burden of proving that their appeal to the Superior Court would have been successful, and therefore have not established that they suffered actual loss as a result of Defendants' negligence. Accordingly, the Court will grant Defendants' motion for summary judgment, and will deny Plaintiffs' motion for summary judgment. An order consistent with this memorandum follows.[15]

---

[14] Judge Grine wrote, "The Court finds that the contract [between UHL and NuFloor] . . . was breached when NuFloor installed substandard underlayment in Ohio Hall." (Doc No. 33-7 at 29.) He later wrote, "This case was a breach of contract case, and as such there it was simply required that Penn State and UHL show that the contracts they had were violated . . . . [W]ithout any expert testimony it was obvious that UHL's contract with NuFloor was . . . breached." (Id. at 65.)

[15] Because the Court will grant summary judgment to Defendants, it will not address Defendants' alternative contention that the attorneys' fees and costs sought by Plaintiffs are not recoverable in this action. (See Doc. No. 30 at 8-9.)